UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOAQUIN MARIO VALENCIA-TRUJILLO,**<br><br>        Plaintiff,<br><br>        v.<br><br>**UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL,**<br><br>        Defendant. | Civil Action No. 10-1572 (ABJ) (AK) |

## REPORT AND RECOMMENDATION

The parties come before the undersigned for a report and recommendation on Plaintiff's

Motion (1) to strike Defendants' answer, (2) to require Defendant to resubmit documents, (3) for

an order that Defendant show cause, (4) for a protective order on released documents and (5) for

a clawback order [13].  Also before this Court is Defendants' Motion for Summary Judgment

[18], in which Defendants also oppose Plaintiff's motions.  Plaintiff submitted an Opposition to

Defendants' Motion for Summary Judgment [24] and Defendants replied [25].  For the reasons

set forth below, the undersigned recommends that Plaintiff's Motion be denied and Defendants'

Motion be granted.

## I.  BACKGROUND

Plaintiff Joaquin Mario Valencia-Trujillo ("Valencia-Trujillo") filed a request for

documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the

Privacy Act, 5 U.S.C. § 552a with the United States Department of the Treasury, Office of

Foreign Assets Control ("OFAC") on December 16, 2008.  Valencia-Trujillo, a Columbian

citizen, was categorized by OFAC as a Specially Designated Narcotics Trafficker ("SDNT").  In

2003, Valencia-Trujillo was arrested and extradited to the United States, where he is currently

imprisoned for convictions of money laundering and drug offenses.  *See United States v.*

*Valencia-Trujillo*, 573 F.3d 1171 (11th Cir. 2009).

Valencia-Trujillo's FOIA filing included twelve requests for documents, the majority of

which contain procedures the OFAC used in reaching a conclusion that Valencia-Trujillo should

be classified as a SDNT.  (Def.'s Mot. for Summary Judgment ("Def.'s Mot.") at 2-3.)  OFAC

conducted a search and identified responsive documents totaling 638 pages.  Of the 638 pages,

OFAC released 381 pages to Valencia-Trujillo in full, made partial redactions on 235 pages and

withheld in full 22 pages. (Def.'s Mot. at 4.)  OFAC released the documents and Valencia-

Trujillo received them on November 26, 2010.  (Def.'s Mot., Ex. 1 at 8; Pl.'s Mots. to Strike, to

Resubmit Documents, to Show Cause, for a Protective Order and for a Clawback Order ("Pl.'s

Mot.") at 2 .)

On December 1, 2010, approximately one week after Valencia-Trujillo received the

production of documents, OFAC became concerned that it did not remove the 22 pages of

documents it intended to withhold in full from the documents given to Valencia-Trujillo.  OFAC

contacted Michael Pineiro ("Pineiro"), the Supervisory Correctional Systems Specialist at the

Federal Correctional Complex at Coleman, FL, where Valencia-Trujillo was incarcerated.

(Def.'s Mot., Ex. 2 at ¶ 1.)  Pineiro's duties included supervising the consolidated mailroom at

the complex.  (*Id.*)  Pineiro issued a confiscation form and took the documents from Valencia-

Trujillo, handing them over to the legal department at the complex for review.  (*Id.* at ¶¶ 7-8.)

During the week in which Valencia-Trujillo had possessed the documents, he had tabbed,

highlighted and notated the documents.  (Pl.'s Mot. at 3.)  On December 2, 2010, the Bureau of

Prisons Senior Counsel Zachary Kelton ("Kelton") advised Pineiro that no documents were

inadvertently released, resulting in Kelton giving the documents to Pineiro who in turn gave them

back to Valencia-Trujillo on December 3, 2010.  (Def.'s Mot., Ex. 2 at ¶¶ 8-10.)  Pineiro's

Declaration describing the actions taken states that, to the best of his knowledge, neither he nor

any Bureau of Prisons employees copied, altered or removed any of the documents.  (*Id.* at ¶ 11.)

Following the temporary confiscation, Valencia-Trujillo submitted a letter to the court.

The trial court construed the letter as containing five motions.  First, Valencia-Trujillo asks that

the Defendants' Answer be stricken.  Second, he asks for an order that Defendants resubmit the

document disclosures made on November 26, 2010.  Third, he requests an order that Defendants

show cause as to the confiscation of the documents on December 1, 2010.  Fourth, he asks the

Court to issue a protective order prohibiting Defendants from altering, redacting or modifying the

documents in the November 26, 2010 disclosure.  Finally, he requests a clawback order for

disclosure or destruction of any copies of the marked-up documents Defendants obtained through

its confiscation of the disclosed documents.  (Pl.'s Mot. at 3.)

After filing his letter containing the five motions, Valencia-Trujillo also filed a Motion to

Compel [15].  Judge Huvell denied the Motion to Compel as premature, (*see* Order denying

Motion to Compel [16]), but the motion prompted OFAC to undertake a supplemental search to

ensure that it had responded fully to Valencia-Trujillo's request.  (Def.'s Mot., Ex. 1 at ¶ 12.)

As a result of the supplemental search, OFAC identified an additional 353 pages of records,

which it released in full to Valencia-Trujillo on February 23 and March 4, 2011.  (*Id.* at ¶ 13.)

Defendants filed their Motion for Summary Judgment on March 10, 2011, asserting that they undertook an adequate search and properly claimed exemptions for withheld documents. Defendants included a *Vaughn* index and declarations from Marshall H. Fields, Jr., the OFAC employee in charge of responding to Plaintiff's FOIA request, and from Piniero.

In Valencia-Trujillo's Opposition, he does not object to the adequacy of OFAC's search (Pl.'s Opp. To Def.'s Mot. at ¶ 7 ("no issue is taken with respect to the Defendant's search for records."))  However, Valencia-Trujillo does object to OFAC's invocation of FOIA exemptions and to the sufficiency of the *Vaughn* index.  He asks the Court to deny the motion for summary judgment and/or conduct an in camera review of the documents to determine whether the invoked exemptions are appropriate.  (*Id.* at ¶ 10.)

Defendants filed a reply, further arguing in favor of its FOIA withholdings.  After the briefings were complete, Defendants released one previously withheld document, a memorandum labeled Exhibit #17.  Defendants determined that the asserted FOIA exemptions do not apply to that document.  (Supplemental Release of Documents [30-1].)

## II.  PLAINTIFF'S MOTIONS

Valencia-Trujillo's five motions are as follows: (1) to strike Defendants' answer, (2) to require Defendant to resubmit documents, (3) for an order that Defendant show cause, (4) for a protective order on released documents and (5) for a clawback order.  (Pl.'s Mot.)

All five motions stem from OFAC's temporary confiscation of certain documents that had been produced to Valencia-Trujillo.  Defendants admit that they confiscated the documents and returned the documents to Valencia-Trujillo within a few days.  (Def.'s Mot., Ex. 2.)

Plaintiff states that he had "tabbed, highlighted, and notated" the documents prior to the confiscation and claims that the confiscation exposed his "work product" to Defendants, who could use it for "a strategical advantage."  (Pl.'s Mot. at 3.)  However, Plaintiff does not explain what prejudice or strategic advantage has resulted or could result from Defendants' access to his notes.  Nor has Plaintiff shown that his notes were made in preparation of litigation as required to qualify as work product under Federal Rules of Civil Procedure 26(b)(3).

Pineiro, in a declaration, stated that: "[t]o the best of my knowledge, at no time did I or any [Bureau of Prison] official remove, copy, or otherwise alter any OFAC document that was obtained from Plaintiff, or neglect to return any documents that were temporarily obtained from Plaintiff . . ."  (Def.'s Mot., Ex. 2 at ¶ 11.)  Defendants explain that the confiscation was not intended to adversely affect Plaintiff, but rather, to ensure that Plaintiff was given the correct documents.  (Def.'s Mot. at 5-6.)  When Defendants confirmed that Plaintiff was given the proper documents, they promptly returned the documents to him.  (Def.'s Mot., Ex. 2 at ¶¶ 7-10.)

As each document was given back to Plaintiff, Defendants are not required to resubmit their disclosures.  An order to show cause is unnecessary, as Defendants have sufficiently explained their reasons for confiscating the documents.  Defendants have stated by declaration that they did not remove, copy, or change any of the confiscated documents, including Plaintiff's notations.  As such, the documents do not need to be covered by a protective order and a clawback order is unwarranted.

Plaintiff also moves to strike Defendant's Answer.  "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Valencia-Trujillo bears the burden of showing that a motion to strike is justified.

-5-

*See Nwachuckwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003).  Defendants' Answer admits basic

facts regarding the case and asserts that Plaintiff failed to state a claim in his Complaint upon

which relief could granted.  (Defs.' Answer [10].)  Defendants' brief confiscation of the released

documents which were returned to him three days later does not preclude the Defendants from

pleading failure to state a claim as a defense.  Fed. R. Civ. P. 12.  Plaintiff has not shown any

legal basis or any prejudice to warrant striking Defendants' Answer.  Accordingly, the

undersigned recommends that Plaintiff's motions be denied.

### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.  Plaintiff's non-FOIA Claims**

Plaintiff's Complaint, which is entitled "Petition for a Writ of Mandamus," cites the

Administrative Procedure Act ("APA") and the Privacy Act in addition to FOIA as statutes under

which he has a claim.  (Compl. [1] at 1.)  Defendants refute Plaintiff's non-FOIA claims in their

Motion for Summary Judgment, arguments that Plaintiff does not challenge in his Opposition.

To obtain mandamus relief or relief under the APA, a plaintiff must have no other

adequate remedy available in a court, and FOIA provides the opportunity for an adequate

remedy.  *See Strunk v. Dep't of State*, 693 F. Supp. 2d 112, 113 n.1 (D.D.C. 2010) (remedy for

Plaintiff's request exists under FOIA, precluding mandamus relief); *Kenney v. Dep't of Justice*,

700 F. Supp. 2d 111, 118 n.3 (D.D.C. 2010) (relief under APA unavailable because review under

FOIA is an adequate court remedy).

Under the Privacy Act, individuals are allowed to obtain records pertaining to themselves

and to request amendments to those records.  5 U.S.C. § 552a.  The definition of "individual"

under the Privacy Act is "a citizen of the United States or an alien lawfully admitted for

permanent residence.  5 U.S.C. § 552a(a)(2).  Those who do not qualify as "individuals" under

the statute may not bring Privacy Act requests.  *See Cudzich v. INS*, 886 F. Supp. 101, 105

(D.D.C. 1995) (plaintiff whose permanent residence status was revoked and thus was not an

individual under Privacy Act was not entitled to relief).  Valencia-Trujillo is not a citizen of the

United States, nor is he a permanent resident.  He was extradited to the United States for trial and

is now incarcerated in the United States.  Therefore, he is not entitled to relief under the Privacy

Act.

**B.  Summary Judgment Standard**

Under Federal Rules of Civil Procedure 56, summary judgment is appropriate where the

documents in the record show no dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).  In ruling on a motion for summary

judgment, the court must draw all justifiable inferences in the nonmoving party's favor and

accept the nonmoving party's evidence as true.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242

252, 106 S.Ct. 2505 (1986).  The nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.*

"FOIA cases are typically and appropriately decided on motions for summary judgment."

*Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  "Summary judgment is warranted on the

basis of agency affidavits when the affidavits describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record, nor by

evidence of agency bad faith."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)

(quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

## C. Adequacy of Defendants' Search

As previously noted, Valencia-Trujillo states in his Opposition that "no issue is taken with respect to Defendant's search."  (Pl.'s Opp. to Def.'s Mot. at 2.)  As such, the undersigned recommends that the Court decline to review the adequacy of OFAC's search for responsive documents.

## D. Adequacy of Defendants' *Vaughn* Index

In opposing OFAC's Motion for Summary Judgment, Valencia-Trujillo argues that OFAC's *Vaughn* Index is overly "general and conclusory" and thus is insufficient to sustain summary judgment.  A *Vaughn* Index is the means by which an agency fulfills its burden to justify the withholding of documents and can be accomplished by "specify[ing] in detail which portions of the document are disclosable and which are allegedly exempt."  *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  A *Vaughn* Index must be 1) one complete document, 2) that adequately describes the withheld documents, and 3) states the particular FOIA exemption and the reason the exemption applies.  *Founding Church of Scientology v. Bell*, 603 F. 2d 945, 949 (D.C. Cir. 1979).

OFAC's *Vaughn* Index meets these qualifications.  It is one document that lists each of the withheld records.  It includes the following: 1) whether the record was withheld in part or in full; 2) the date the document was created; 3) the page number where the document can be found within the disclosure; 4) the exemption(s) asserted; and 5) a description of the record.  The descriptions are short but detailed enough to adequately describe the records and why the FOIA exemption applies.  *See Judicial Watch Inc. v. Food and Drug Administration*, 449 F.3d 141, 146 (D.C. Cir. 2006) ("[W]e focus on the functions of the *Vaughn* Index, not the length of the

-8-

document descriptions, as the touchstone of our analysis.")

For example, "Exhibit 12 to Evidentiary Memorandum" is withheld in full.  Its

description reads: "[t]his document is a confidential report produced by an entity other than the

United States government regarding the narcotics trafficking activities of Mr. Valencia-Trujillo

and associated individuals and entities."  (Def.'s Mot., Ex. 1 at 6.)  OFAC asserts Exemption

7(E) for the document, noting that the document was withheld in full because "OFAC

determined that any disclosure of the contents or formatting of this report could identify its

source."  (*Id.* at 7.)  This summary provides a reasonable description of the document's content,

balancing the need to disclose information about why the relevant FOIA exemption applies with

the need to maintain the confidentiality of the withheld information.  Each entry is similarly

detailed.  The undersigned recommends that OFAC's *Vaughn* Index is detailed and specific

enough to support a finding of summary judgment.

**E.  FOIA Exemption 7(E)**

Defendants withhold documents under FOIA Exemptions 6, 7(C) and 7(E).[1]  Exemption

7(E) applies to documents containing law enforcement information that "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The agency has a

---

[1]Defendants' *Vaughn* Index also asserts Exemption 2 to withhold information related to internal personnel rules and practices; however, pursuant to the Supreme Court's decision in *Milner v. Dep't of the Navy*, 131 S.Ct 1259, 1271, - - U.S. - - (2011), Exemption 2 only applies when the information involves employee relations and human resources.  The information in this case does not fall under the new requirements for Exemption 2.  Therefore, Defendants rely on other claimed exemptions where Exemption 2 no longer applies (*See* Def.'s Mot. at 13.)

"relatively low bar" to justify withholding, as Exemption 7(E) "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.* 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).

Valencia-Trujillo asks that the Court conduct an in camera review of all withheld records and specifically challenges Defendant's withholdings of Exhibits Nos. 12 and 16.  (Pl.'s Opp. to Def.'s Mot. at ¶ 9.)  Exhibit 12 is described as "a confidential report produced by an entity other than the United States government regarding the narcotics trafficking activities of Mr. Valencia-Trujillo and associated individuals and entities."

Defendant argues that disclosure would identify the source of the report and make public information about how OFAC obtains information regarding targets' drug trafficking activities. (Def.'s Mot. at 15.)  Releasing the document would harm the ability of OFAC to obtain information in future investigations because it would discourage the source from providing information and enable potential targets to more easily evade investigation.  (*Id.*); *see Barnard v. Dep't of Homeland Security*, 598 F. Supp 2d. 1, 22 (D.D.C. 2009) (holding that Exemption 7(E) applies to cooperative arrangements and other techniques designed to gather information about Plaintiff because knowledge of such techniques could allow potential targets to avoid investigation).  Plaintiff has provided the Court with no reason to doubt the validity of Defendants' arguments for non-disclosure.  The potential for evasion of future OFAC investigations and the need to protect sources of information create a risk of circumvention of the law, justifying non-disclosure of Exhibit 12 under Exemption 7(E).

Exhibit 16 is a memorandum describing an interview between an OFAC investigator and

an individual with knowledge of Valencia-Trujillo's drug trafficking activities.  (Def.'s Mot. at

16.)  Disclosure of the document would identify an individual who OFAC contacted to obtain

information as part of its investigation.  (*Id*.)  As with Exhibit 12, releasing Exhibit 16 would

give future potential targets better knowledge about how OFAC conducts investigations, making

it easier for such targets to hinder the investigations.

Of the remaining withheld documents, almost all are entitled "Report From Commercial

Research Service" and are reports that were utilized by OFAC in its investigation of Valencia-

Trujillo.  *See Vaughn* Index.  The undersigned recommends that the documents are properly

withheld under Exemption 7(E) because disclosing the identity of the commercial research

service would reveal information about how investigations are conducted and creates the

possibility of circumvention of the law.[2]

## F.  FOIA Exemption 7(C)

Exemption 7(C) exempts disclosure of law enforcement information where production

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(7)(C).  The Court must weigh the individual's privacy interest against the

public's interest in the information.  *SafeCard Services v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir.

1991).  Names of private individuals are generally exempt, except when in regard to allegations

of government misconduct.  *Sussman v. U.S. Marshall Service*, 494 F.3d 1106, 1115 (D.C. Cir.

2007); *Adionser v. Dep't of Justice*, No. 10-027, 2011 WL 4346399, *7-8 (D.D.C., Sept. 15,

2011) (Exemption 7(C) applies to information relating to the identities of third parties, special

---

[2]Defendants also claim Exemptions 6 and 7(C) apply to the reports from a commercial
research service, but because the Court finds that 7(E) applies, it does not make a determination
of whether the reports could be withheld under Exemption 6 or 7(E).

agents, government employees and local law enforcement personnel who participated in the investigation and prosecution of plaintiff's case).

Defendants withhold parts of documents compiled for law enforcement purposes "to protect the name(s) of staff-level Treasury employees." (Def.'s Mot. at 19.)[3] The Treasury employees have a substantial interest in their anonymity, *see Adoinser*, 2011 WL 4346399 at *8, and Plaintiff has not shown any public interest in releasing their names. Nor have any allegations of misconduct on the part of the Treasury employees been made. The undersigned recommends that redaction of documents to protect the name(s) of staff-level Treasury employees is proper under Exemption 7(C).

## G. Segregability

After an agency redacts the exempted information, it must release any reasonably segregable information "unless the non-exempt information is inextricably intertwined with the exempt information." *Trans–Pac. Policing Agmt. v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir.1999) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). A court must consider the segregability issue, even *sua sponte. Id.* at 1028. Defendants assert that responsive documents were evaluated to determine if any additional information could be segregated and any such information was released. (Decl. of Marshall H. Fields, Jr., ¶ 19.) Fields' Declaration is afforded good faith without evidence to the contrary. *See SafeCard Services*, 926 F.2d at 1200. Taking into account Fields' Declaration along with the information in the *Vaughn* Index, the undersigned recommends that Defendants have provided

---

[3]Defendants also assert Exemption 6 to protect the name(s) of staff-level Treasury employees, but an analysis under Exemption 7(C) is sufficient to justify non-disclosure.

sufficient information for the Court to conclude that all reasonably segregable information has been released.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's Motions (1) to strike Defendants' answer; (2) to require Defendant to resubmit documents; (3) for an order that Defendant show cause; (4) for a protective order on released documents; and (5) for a clawback order [13] be denied.  The undersigned recommends that Defendants' Motion for Summary Judgment [18] be granted.

## V.  REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this Report may waive their right of appeal from an order of the District Court that adopts such findings and recommendations.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  January 9, 2012                                    _____/s/_____

                                                                          ALAN KAY
                                                                          UNITED STATES MAGISTRATE JUDGE